UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | |
|---|---|
| THE LIBERTARIAN PARTY OF KENTUCKY, et al., <br><br> Plaintiffs, <br><br> V. <br><br> ALISON LUNDERGAN GRIMES, et al., <br><br> Defendants. | Civil No. 3:15-cv-00086-GFVT <br><br> **MEMORANDUM OPINION & ORDER** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

In this action, the Libertarian Party and Constitution Party challenge Kentucky's ballot access regime for political bodies other than the Republican and Democratic Parties. The Plaintiffs specifically take issue with the available method that political bodies must follow in order to obtain ballot access generally under Kentucky law, and they assert violations of their members' constitutional rights under the current ballot access regime. The Libertarian Party and other Plaintiffs have sued the Commonwealth's Attorney General, Secretary of State, and various members of the State Board of Elections in their official capacities for a declaration of rights and permanent injunctive relief. All of the Defendants have moved to dismiss the Plaintiffs' claims, arguing their Eleventh Amendment immunity precludes this lawsuit. For the reasons stated below, the Court GRANTS Attorney General Beshear's motion to dismiss but DENIES Secretary Grimes' and the KSBE's.[1]

---

[1] By separate Order, the Court considers the Plaintiffs' Motion for Summary Judgment [R. 16]; the Plaintiffs' Emergency Motion to Expedite [R. 17]; and both parties' requests for a status conference [R. 23; R. 24].

# I

## A

Kentucky law sets forth three categories of political bodies: political parties, political organizations, and political groups. A political party is defined as an "organization of electors representing a political policy and having a constituted authority for its government and regulation, and whose candidate received at least twenty percent (20%) of the total vote cast at the last preceding election at which presidential electors were voted for." KRS § 118.105(1). A political organization is defined as "a political group not constituting a political party . . . but whose candidate received two percent (2%) or more of the vote of the state at the last preceding election for presidential electors." KRS § 118.105(8). Finally, a political group is defined as "a political group not constituting a political party or a political organization." KRS § 118.105(9).

Pursuant to KRS § 118.305(1)(a)-(d), candidates for political parties and political organizations automatically earn ballot access for the four-year period following a qualifying presidential election. Candidates for third party political groups are, however, treated as "independent candidates" under KRS § 118.305(1)(e). In order for these third party groups to qualify for ballot access, they must petition, obtaining the designated number of signatures set forth in KRS § 118.315(2) in separate petitions for each candidate.[2] Under Kentucky law, this petition process will never result in automatic ballot access. Instead, the only way a political body can become a "political party" or a "political organization"—thus obtaining automatic ballot access for a four-year time period—is through the results of a presidential election.

The Libertarian Party and the Constitution Party are currently considered third party political groups. Therefore, they must obtain ballot access through the petition system. In this

---

[2] KRS § 118.315(2) requires 5,000 signatures for statewide office; 400 signatures for a Congressional district; and 100 signatures for a state House or Senate district.

2

lawsuit, they challenge Kentucky's ballot access regime. Their complaint is that no method exists apart from a presidential election for a political body to obtain "blanket" ballot access. Thus, they claim violations of the First and Fourteenth Amendments and consequently seek permanent injunctive relief from KRS § 118.015 and KRS § 118.305.

While the Plaintiffs declare Kentucky's ballot access scheme is unconstitutional under current Supreme Court and Sixth Circuit precedent, this opinion is not about the merits. Instead, the Court is faced with the threshold issue of whether the Defendants are proper parties to the action. Attorney General Andy Beshear,[3] charged with "enforc[ing] all of the state's election laws by civil or criminal processes," argues he should be dismissed from the case. [R. 6.] According to Attorney General Beshear, his general authority to enforce the election laws is insufficient to qualify him as a proper Defendant or to implicate the *Ex parte Young* exception to his Eleventh Amendment immunity. In a separate motion, Secretary of State Alison Lundergan Grimes and the members of the Kentucky State Board of Elections ("KSBE") also seek dismissal. [R. 7.] They argue their duty to "administer" the election laws is also insufficient to trigger an exception to Eleventh Amendment immunity and to subject them to suit by the Plaintiffs. For the reasons that follow, the Attorney General is correct and Secretary Grimes is mistaken.

**B**

Federal Rule of Civil Procedure 12(b)(6) allows a Defendant to seek dismissal of a complaint which fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

---

[3] The Plaintiffs filed their Complaint on December 4, 2015, when Jack Conway was Attorney General of the Commonwealth. On January 4, 2016, Andy Beshear assumed the office of Attorney General. Accordingly, Attorney General Beshear was automatically substituted for former Attorney General Conway as a party to this action. *See* Fed. R. Civ. P. 25(d); *Kentucky v. Graham*, 473 U.S. 159, 166 n. 11 (1985).

Federal Rule of Civil Procedure 8 requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, as is now well known, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A court reviewing a 12(b)(6) motion must "accept all the Plaintiffs' factual allegations as true and construe the complaint in the light most favorable to the Plaintiffs." *Hill v. Blue Cross & Blue Shield of Mich.*, 409 F.3d 710, 716 (6th Cir. 2005). However, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id*. (citing *Twombly*, 550 U.S. at 556). Ultimately, the Court will dismiss a complaint if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 424 (6th Cir. 2002) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

## II

The following legal framework applies to both motions to dismiss. In general, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Put simply, lawsuits against state officials are treated as lawsuits against the State itself. *Kentucky v. Graham*, 473 U.S. 149, 165-66 (1985). Many suits against a State are barred by the State's Eleventh Amendment sovereign immunity. *See Will*, 491 U.S. at 66. However, an exception to Eleventh Amendment sovereign immunity exists pursuant to the doctrine set forth in *Ex parte Young*, 209 U.S. 123 (1908). Under *Ex parte Young*,

> individuals who, as officers of the state, are clothed with some duty in regard to the enforcement of the laws of the state, and who threaten and are about to

4

> commence proceedings, either of a civil or criminal nature, to enforce against parties affected an unconstitutional act, violating the Federal Constitution, may be enjoined by a Federal court of equity from such action.

209 U.S. at 155-56.

The Sixth Circuit Court of Appeals has indicated that courts "have not read *Young* expansively." *Children's Healthcare is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412, 1415 (1996). According to the Sixth Circuit, "*Young* does not apply when a defendant state official has neither enforced nor threatened to enforce the allegedly unconstitutional state statute." *Id.* Under *Young*, a state actor "must have some connection with the enforcement" of the allegedly unconstitutional act, and this connection must be "more than a bare connection." *Young*, 209 U.S. at 157; *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1047 (6th Cir. 2015). "General authority to enforce the laws of the state is not sufficient to make government officials the proper parties to litigation challenging the law." *Russell*, 784 F.3d at 1048 (quoting *1st Westco Corp. v. Sch. Dist. Of Philadelphia*, 6 F.3d 108, 113 (3rd Cir. 1993)).

Ostensibly, Attorney General Beshear, Secretary Grimes, and the members of the KSBE all assert the *Ex parte Young* exception does not apply to them in this case. The Court begins with the arguments of Secretary Grimes and the KSBE, and then considers those of Attorney General Beshear.

**A**

KRS § 117.101(1) provides for a State Board of Elections to "administer the election laws of the State and supervise registration and purgation of voters within the state." The Secretary of State serves as the chair of the State Board of Elections and is "the chief election official for the Commonwealth." KRS § 117.101(2). In their joint motion to dismiss, Secretary of State Alison Lundergan Grimes and the State Board of Elections members maintain their

5

authority to "administer" Kentucky's election laws is too general to subject them to the Plaintiffs' suit, which challenges the constitutionality of KRS § 118.015 and KRS § 118.305. They argue their "statutory obligation to administer the ballot access provisions" is insufficient to qualify them for the *Ex parte Young* exception to Eleventh Amendment immunity. [*See* R. 15 at 4.]

Indeed, Secretary Grimes and the KSBE do not appear to be the parties directly responsible for perpetuating the allegedly unconstitutional ballot access regime in the day-to-day. Instead, one of the challenged statutes, KRS § 118.305, designates that role to the county clerks. KRS § 118.305 provides that county clerks are responsible for printing the voting machine and absentee ballots in accordance with the challenged ballot access framework. KRS § 118.305(1). County clerks are not permitted to knowingly print ballots or otherwise allow candidates to appear on the ballot outside of the current ballot access regime. KRS § 118.305(5). However, while Secretary Grimes and the KSBE are not personally responsible for listing the candidates' names on ballots *per se*, they are tasked with providing training to county clerks and other members of county boards of elections. KRS § 117.187; *see also* KRS § 117.035(2)(a) (indicating county clerks serve on their requisite county boards of elections). Therefore, Secretary Grimes and the KSBE have some control over the perpetuation of the ballot access regime the Plaintiffs challenge.

In *Russell v. Lundergan-Grimes*, the Sixth Circuit found Secretary Grimes and the KSBE to be proper parties to an action challenging a Kentucky voting statute that provided for a 300-foot no-political-speech buffer zone around polling locations on Election Day. 784 F.3d at 1043. Citing to KSBE's "expansive authority" to administer Kentucky election laws and its role in training state and local personnel (including county clerks and county boards of elections, as

6

described above) on the implementation of Kentucky's election laws, the court determined the KSBE and Secretary Grimes satisfied the requirements of the *Ex parte Young* exception. *Id.* at 1048. The court noted that KSBE had promulgated an administrative regulation authorizing an exemption to the challenged statute, and that act combined with the Defendants' general authority was enough to subject them to suit under the *Ex parte Young* exception to Eleventh Amendment sovereign immunity. *Id.* at 1048-49.

Secretary Grimes and the KSBE attempt to distinguish *Russell* from the instant matter. They argue *Russell* is inapposite because, in that case, Secretary Grimes and the KSBE had acted by promulgating an administrative regulation that authorized an exemption to the challenged statute. They assert no such action occurred in this case. It is true that the Plaintiffs do not allege Secretary Grimes or the KSBE promulgated a certain regulation or took a particular action that violated the Plaintiffs' rights. Instead, the Plaintiffs essentially challenge the constitutionality of the Commonwealth's entire ballot access framework.

After careful review of binding precedent and other persuasive law, the Court determines Secretary Grimes and the KSBE are proper parties to the Plaintiffs' suit. While *Russell* is not entirely on point, it suggests the Plaintiffs' instant action against Secretary Grimes and the KSBE may be appropriate. In *Russell*, the Sixth Circuit recognized that the Commonwealth's Secretary of State and KSBE "are empowered with expansive authority" to administer Kentucky's election laws. 784 F.3d at 1048. It found that "[e]njoining a statewide official under *Young* based on his obligation to enforce a law is appropriate when there is a realistic possibility the official will take legal or administrative actions against the plaintiff's interests." *Id.* While no specific legal or administrative actions have been taken or threatened here, Secretary Grimes and the KSBE effectively act against the Plaintiffs' interests every time they administer or otherwise facilitate a

new election. Every election perpetuates the allegedly unconstitutional ballot access regime, and for a challenge to the regime itself, the KSBE and Secretary Grimes as chair appear to be proper Defendants.

Further, while not binding precedent, the Eighth Circuit has determined the Eleventh Amendment did not bar a suit against the Missouri Secretary of State in a similar situation. *See Missouri Protection and Advocacy Servs., Inc., v. Carnahan*, 499 F.3d 803 (8th Cir. 2007). In that case, the plaintiffs challenged Missouri's laws regarding the loss of voting rights by persons under court-ordered guardianship. *Id.* at 807. Missouri law gave local county clerks and other authorities the broad power to register voters and administer elections, making these local authorities the seemingly responsible parties for violating the election statutes in question. However, the Secretary of State, statutorily described as "the chief state election official" responsible for overseeing the voter registration process on the whole and administering federal voting laws, was found to be a proper defendant in the plaintiff's constitutional challenge.[4] *Id.*

In addition, the KSBE and Kentucky Secretary of State have previously been found proper defendants in an action challenging the general existence of a Kentucky election law. *See Richardson v. State Board of Elections*, 697 F. Supp. 295, 295-96 (W.D. Ky. 1988). In *Richardson*, the plaintiffs challenged a Kentucky statute which set the deadline for changing party affiliation in order to vote in a primary election. *Id.* The case involved no particular action

---

[4] The Missouri Secretary of State was also obligated to send local election authorities the names of persons judged incapacitated to vote. *Carnahan*, 499 F.3d at 807. This suggests the Missouri Secretary had a more active role with the statutes at issue in *Carnahan* than Secretary Grimes and the KSBE have with the Commonwealth statutes challenged here. However, that obligation on behalf of the Missouri Secretary of State was only one of several facts the Eighth Circuit considered in applying the *Ex parte Young* exception. *See id.* The Court is still persuaded by the Eighth Circuit's determination that the Missouri Secretary of State, vested with general oversight of the elections process, was a proper defendant where local clerks were the parties primarily responsible for carrying out the alleged unconstitutional activity.

on the part of the Secretary of State or the KSBE; rather, it was a challenge to the mere existence of the statute itself. The court determined the *Ex parte Young* exception to the defendants' sovereign immunity applied. *Id.* at 296.

On the whole, the Court finds that the Secretary of State and KSBE are proper Defendants where the Plaintiffs seek to challenge the constitutionality of the overall ballot access regime. Although the Sixth Circuit has cautioned "[h]olding that a state official's obligation to execute the laws is a sufficient connection to the enforcement of a challenged statute would extend *Young* beyond what the Supreme Court has intended and held," the Court finds more of a relationship here. *See Children's Healthcare*, 92 F.3d at 1416. Secretary Grimes and the KSBE are charged with "administer[ing]" the Commonwealth's election laws, and they provide training for those local individuals and bodies specifically charged with printing the ballots in accordance with the allegedly unconstitutional ballot access framework. KRS § 117.015(1); KRS § 117.187. The Court deems this "more than a bare connection" and denies Secretary Grimes and the KSBE's motion to dismiss. *See Russell*, 784 F.3d at 1047.

**B**

On the other hand, Attorney General Beshear is not a proper Defendant under the *Ex parte Young* exception. While he is charged with "enforcing" the election laws of the Commonwealth, the Attorney General's enforcement powers relate only to violations of the election laws. Because the Plaintiffs do not assert a violation of one of Kentucky's election laws, he has no power to provide any relief.

Under KRS § 15.242,

The Attorney General shall possess jurisdiction, concurrent with that of county and Commonwealth's attorneys, to investigate and prosecute violations of the election laws. The Attorney General, county attorneys, and Commonwealth's

9

>attorneys shall notify the Registry of Election Finance of any investigation or prosecution of alleged election law violations.

Further, KRS § 15.243 provides for the Attorney General to "enforce all of the state's election laws by civil or criminal processes." KRS § 15.243(1). The statute goes on to describe the methods the Attorney General should employ to do so, including devising programs to observe the conduct of elections, holding public hearings, establishing a telephone service through which to receive reports of election violations, investigating alleged violations, and, in general, prosecuting election violations. KRS § 15.243(2)-(4). Upon considering the full text of KRS §§ 15.242 and 15.243, the Court agrees with Attorney General Beshear that the Attorney General's enforcement role is concerned more with election law violations and less with administering the ballot access regime on the whole. Where Secretary Grimes and the KSBE are tasked with the latter, they consequently perpetuate the ballot access framework in question each time they administer a new election. Attorney General Beshear's role in the elections process, however, is more tangential.

Where courts have found a state Attorney General to be a proper defendant in an election dispute, the challenged statute tends to be one that implicates the Attorney General's prosecutorial or civil enforcement authority. For example, the Attorney General of Kentucky was a proper defendant in *Russell v. Lundergan-Grimes*, where the plaintiff challenged an election statute creating a 300-foot no-political-speech buffer zone around polling locations on Election Day. 784 F.3d 1037. The Attorney General, through his powers under KRS §§ 15.242 and 15.243, could criminally prosecute the plaintiff for violating the statute in question, and the Attorney General's office frequently investigated complaints of impermissible electioneering that implicated the relevant statute and other similar laws. *Id.* at 1047. Similarly, in *McNeilus Truck and Manufacturing, Inc. v. Ohio ex rel. Montgomery*, the Attorney General of Ohio was a

10

proper defendant where the plaintiff challenged a statute governing the licensing of vehicle remanufacturers.  226 F.3d 429 (6th Cir. 2000).  In that case, the Ohio Bureau of Motor Vehicles threatened to withdraw the plaintiff's license, and the statute in question gave the Attorney General authority to help enforce the noncriminal portions of the statute.  *Id.* at 437.  Although the Attorney General had no prosecutorial authority related to the statute, his power to take civil action—i.e. enforce the withdrawal of the plaintiff's remanufacturing license—was enough to implicate the *Ex parte Young* exception and subject him to suit.  *Id.*

In the matter before the Court, the Attorney General's general authority to enforce the Commonwealth's election laws involves little authority concerning the ballot access regime itself.  The Attorney General can investigate election violations, implement systems of communication through which the public can report election violations, work with county attorneys to prosecute violators, and more.  But after considering the statutes that set forth the Attorney General's enforcement authority, it is difficult for the Court to envision how, in the present situation, the Attorney General could "take legal or administrative actions against the plaintiff's interests."  *Russell*, 784 F.3d at 1048.  This case is not like *Russell*, where the plaintiff could violate the statutorily mandated no-political-speech zone and face prosecution from the Attorney General.  *See id.* at 1043, 1047.

Nor is this case like *McNeilus*, where the Attorney General had some civil enforcement power over the plaintiffs.  *McNeilus*, 226 F.3d at 437.  Instead, the Plaintiffs are actually unable to violate the statutes in question so as to trigger an Attorney General investigation or prosecution.  The challenged statutes prevent the Plaintiffs from obtaining blanket ballot access.  The Plaintiffs themselves cannot somehow violate these statutes by impermissibly causing their candidates to be printed on the election ballots, thus subjecting themselves to the Attorney

11

General's enforcement authority. Further, the Court notes Attorney General Beshear has elected not to intervene in the Plaintiffs' constitutional challenges to KRS § 118.015 and KRS § 118.305. [R. 5.] Overall, the Court finds the Attorney General's relationship with the challenged statutes too attenuated to trigger the *Ex parte Young* exception to the Attorney General's Eleventh Amendment immunity. The Court therefore grants the Attorney General's motion to dismiss.

### III

In conclusion, the Court finds that Secretary of State Alison Lundergan Grimes and the KSBE have enough of a connection with the challenged statutes to be proper Defendants under *Ex parte Young*. Conversely, where Attorney General Beshear's relationship to the ballot access regime is more attenuated, the Court will grant his motion to dismiss. For the foregoing reasons, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** that:

1. The Motion to Dismiss filed by Defendants Alison Lundergan Grimes and the Kentucky State Board of Elections [R. 7] is **DENIED**;

2. The Motion to Dismiss filed by Attorney General Beshear [R. 6] is **GRANTED;** and

3. The Plaintiffs' claims against Attorney General Beshear in his official capacity are hereby terminated from the case.

This the 22nd day of February, 2016.



Gregory F. Van Tatenhove
United States District Judge